# SUPREME COURT OF THE UNITED STATES

GORDON COLLEGE, ET AL., *v.* MARGARET
DEWEESE-BOYD

ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME
JUDICIAL COURT OF MASSACHUSETTS

No. 21–145.   Decided February 28, 2022

The petition for a writ of certiorari is denied.

Statement of JUSTICE ALITO, with whom JUSTICE
THOMAS, JUSTICE KAVANAUGH, and JUSTICE BARRETT join,
respecting the denial of certiorari.

The Religion Clauses of the First Amendment sometimes
forbid "courts to intervene in employment disputes involv-
ing teachers at religious schools who are entrusted with the
responsibility of instructing their students in the faith."
*Our Lady of Guadalupe School* v. *Morrissey-Berru*, 591
U. S. \_\_\_, \_\_\_ (2020) (slip op., at 1); see also *Hosanna-Tabor
Evangelical Lutheran Church and School* v. *EEOC*, 565
U. S. 171 (2012).  The Supreme Judicial Court of Massachu-
setts held that this "ministerial exception" did not apply to
a professor at a religious college who "did not teach religion
or religious texts," but who was still expected to "integrate
her Christian faith into her teaching and scholarship."  487
Mass. 31, 33, 163 N. E. 3d 1000, 1002 (2021).  Although the
state court's understanding of religious education is trou-
bling, I concur in the denial of the petition for a writ of cer-
tiorari because the preliminary posture of the litigation
would complicate our review.  But in an appropriate future
case, this Court may be required to resolve this important
question of religious liberty.

I

Petitioner Gordon College is a Christian college in Wen-
ham, Massachusetts. The college's bylaws state that it

"strives to graduate men and women distinguished by in-
tellectual maturity and Christian character."  App. to Pet.
for Cert. 133a (emphasis deleted).  As "a Christian commu-
nity of the liberal arts and sciences," the college "is dedi-
cated to:

- The historic, evangelical, biblical faith;
- Education, not indoctrination;
- Scholarship that is integrally Christian;
- People and programs that reflect the rich mosaic of
  the Body of Christ;
- Life guided by the teaching of Christ and the empow-
  erment of the Holy Spirit;
- The maturation of students in all dimensions of life:
  body, mind and spirit;
- The application of biblical principles to transform so-
  ciety and culture." *Ibid.* (emphasis deleted).

The college requires all of its faculty to sign a "Christian
Statement of Faith," which affirms that the "66 canonical
books of the Bible as originally written were inspired of
God" and that there "is one God, the Creator and Preserver
of all things, infinite in being and perfection."  *Id.*, at 114a
(internal quotation marks omitted).  The faculty handbook
explains that the college's professors are expected "to en-
gage students in their respective disciplines from the per-
spectives of Christian faith" and "to participate actively in
the spiritual formation of its students into godly, biblically-
faithful ambassadors for Christ."  *Id.*, at 118a.  The hand-
book also states that the most important task of the "Chris-
tian educator" is the "integration" of faith and learning.  *Id.*,
at 119a.

Respondent Margaret DeWeese-Boyd was hired as a fac-
ulty member in Gordon College's department of social work
in 1998.  DeWeese-Boyd's application for employment at
Gordon College acknowledged "personal agreement with
Gordon's Statement of Faith, stated her Christian beliefs,

described her pilgrimage as a Christian, [and] explained how her Christian commitment affected her scholarship." *Id*., at 122a. Her application also mentioned her Christian missionary work in the Philippines and indicated that she had earned an advanced degree in theology. *Id.,* at 124a. In 2009, when DeWeese-Boyd applied for tenure, she submitted a paper titled "Reflections on Christian Scholarship" that discussed her "integration of the Christian faith into her work." *Id*., at 126a (internal quotation marks omitted).

In 2016, DeWeese-Boyd applied for promotion to full professor, and that application explained that she thought the "work of integration" required "pursuing scholarship that is faithful to the mandates of Scripture, the vocational call of Christ, and the dictates of conscience." Joint Exhs. App. for Summary Judgment in No. 1777cv01367, p. 195 (Super. Ct. Essex Cty., Mass., Sept. 17, 2010). Student evaluations, also included in the 2016 application, stated that she "did a great job of connecting class materials with Christian faith" and "calling our thoughts to a higher level of Christian responsibility." App. to Pet. for Cert. 128a, 130a–131a (internal quotation marks omitted).

Gordon College denied her 2016 application for a promotion, citing lack of scholarly productivity, among other things. She sued in the Superior Court of Massachusetts, alleging that the college and its agents had actually denied her a promotion because of "her vocal opposition to [the college's] policies and practices regarding individuals who identify as lesbian, gay, bisexual, transgender, or queer." 487 Mass., at 34, 163 N. E. 3d, at 1003. The parties cross-moved for summary judgment on the question whether the ministerial exception barred DeWeese-Boyd's claims. The trial court ruled in favor of DeWeese-Boyd, and the Supreme Judicial Court of Massachusetts granted an application for direct appellate review of the summary-judgment ruling.

The Supreme Judicial Court affirmed. It concluded that

DeWeese-Boyd was not a "minister" under this Court's decisions in *Our Lady of Guadalupe School*, 591 U. S. ___, and *Hosanna-Tabor Evangelical Lutheran Church and School*, 565 U. S. 171. The court reasoned that DeWeese-Boyd did not "undergo formal religious training, pray with her students, participate in or lead religious services, take her students to chapel services, or teach a religious curriculum." 487 Mass., at 53, 163 N. E. 3d, at 1017. Though the court recognized that she was required to "integrate the Christian faith into her teaching, scholarship, and advising," the court reasoned that this integrated teaching was "different in kind" from religious instruction. *Ibid.*

The college filed a petition for certiorari, essentially asking us to decide whether the ministerial exception bars the present lawsuit.

## II

In *Our Lady of Guadalupe School*, we explained that the "ministerial exception" protects the "autonomy" of "churches and other religious institutions" in the selection of the employees who "play certain key roles." 591 U. S., at ___ (slip op., at 11). We recognized that "educating young people in their faith, inculcating its teachings, and training them to live their faith are responsibilities that lie at the very core of the mission of a private religious school." *Id.,* at __ (slip op., at 18). Because the teachers in that case had been, among other things, "entrusted most directly with the responsibility of educating their students in the faith," we concluded that the ministerial exception applied to such educators. *Id.,* at ___ (slip op., at 21).

The Massachusetts Supreme Judicial Court thought that DeWeese-Boyd was not a religious educator because she did not "teach religion, the Bible, or religious doctrine." 487 Mass., at 49, 163 N. E. 3d, at 1014. Though it acknowledged her responsibility "to integrate the Christian faith into her

teaching, scholarship, and advising," the state court asserted that this responsibility was "different in kind" from the kind of religious education at issue in *Our Lady of Guadalupe School* and insufficient to make DeWeese-Boyd a minister. 487 Mass., at 53, 163 N. E., at 1017.

That conclusion reflects a troubling and narrow view of religious education. What many faiths conceive of as "religious education" includes much more than instruction in explicitly religious doctrine or theology. As one *amicus* supporting the college explains, many religious schools ask their teachers to "show students how to view the world through a faith-based lens," even when teaching nominally secular subjects. See Brief for Jewish Coalition for Religious Liberty et al. as *Amici Curiae* 6. For example, a professor teaching a course on the civil rights movement at a secular college might concentrate on the political, economic, and sociological aspects of the struggle for racial justice, while a professor at a Christian college might also highlight Dr. Martin Luther King Jr.'s faith and the biblical arguments in his famous Letter from Birmingham Jail. Similarly, an English professor at a secular college might see nihilism and skepticism in Shakespeare's King Lear, while a professor at a Catholic school might present it as a pilgrimage to redemption. See Brief for Association of Christian Schools International as *Amicus Curiae* 6–8 (listing other examples).

Faith-infused instruction of this kind might complement student instruction in explicitly religious subjects. For example, Gordon College requires all of its students to take required courses on the Old Testament, the New Testament, and Christian Theology; they must also earn "Christian Life and Worship" credits for attending chapel services (or other similar faith-based events). But religious education at Gordon College does not end as soon as a student passes those required courses and leaves the chapel. In-

stead, the college asks *each* member of the faculty to "integrate" faith and learning, *i.e.,* "to help students make connections between course content, Christian thought and principles, and personal faith and practice." App. to Pet. for Cert. 119a.

For those reasons, I have doubts about the state court's understanding of religious education and, accordingly, its application of the ministerial exception. But DeWeese-Boyd argues that because the Supreme Judicial Court of Massachusetts affirmed the trial court's summary-judgment ruling in an interlocutory posture, its ruling is not a "final judgment" under 28 U. S. C. §1257. Gordon College responds that the decision is a reviewable final judgment under *Cox Broadcasting Corp.* v. *Cohn,* 420 U. S. 469 (1975), but at the very least this threshold jurisdictional issue would complicate our review. The brief in opposition notes, however, that "[i]f DeWeese-Boyd prevails in the trial court, there is nothing that would preclude Gordon [College] from appealing at that time, including seeking review in this Court when the decision is actually final." Brief in Opposition 16. On that understanding, I concur in the denial of certiorari.